UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE


Lisa Aldridge

    v.                                  Civil No. 18-cv-177-LM
                                         Opinion No. 2019 DNH 034
Nancy A. Berryhill, Acting
Commissioner of Social Security


**O R D E R**

Lisa Aldridge seeks judicial review, pursuant to 42 U.S.C. § 405(g), of the decision of the Acting Commissioner of the Social Security Administration, denying her application for disability insurance benefits. Aldridge moves to reverse the Acting Commissioner's decision, and the Acting Commissioner moves to affirm. For the reasons discussed below, the decision of the Acting Commissioner is affirmed.

**STANDARD OF REVIEW**

In reviewing the final decision of the Acting Commissioner in a social security case, the court "is limited to determining whether the [Administrative Law Judge] deployed the proper legal standards and found facts upon the proper quantum of evidence." Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999); accord Seavey v. Barnhart, 276 F.3d 1, 9 (1st Cir. 2001). The court defers to the ALJ's factual findings as long as they are supported by substantial evidence. 42 U.S.C. § 405(g); see also Fischer v.

Colvin, 831 F.3d 31, 34 (1st Cir. 2016). "Substantial evidence is more than a scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Astralis Condo. Ass'n v. Sec'y Dep't of Housing & Urban Dev., 620 F.3d 62, 66 (1st Cir. 2010).

In determining whether a claimant is disabled, the ALJ follows a five-step sequential analysis. 20 C.F.R. § 404.1520(a)(4). The claimant "has the burden of production and proof at the first four steps of the process." Freeman v. Barnhart, 274 F.3d 606, 608 (1st Cir. 2001). The first three steps are (1) determining whether the claimant is engaged in substantial gainful activity; (2) determining whether she has a severe impairment; and (3) determining whether the impairment meets or equals a listed impairment. 20 C.F.R. § 404.1520(a)(4)(i)-(iii).

At the fourth step of the sequential analysis, the ALJ assesses the claimant's residual functional capacity ("RFC"), which is a determination of the most a person can do in a work setting despite her limitations caused by impairments, id. § 404.1545(a)(1), and her past relevant work, id. § 404.1520(a)(4)(iv). If the claimant can perform her past relevant work, the ALJ will find that the claimant is not disabled. See id. § 404.1520(a)(4)(iv). If the claimant cannot perform her past relevant work, the ALJ proceeds to Step Five,

in which the ALJ has the burden of showing that jobs exist in the economy which the claimant can do in light of the RFC assessment. See id. § 404.1520(a)(4)(v).

## BACKGROUND

A detailed statement of the facts can be found in the parties' Joint Statement of Material Facts (doc. no. 10). The court provides a brief summary of the case here.

On October 13, 2014, Aldridge filed an application for disability insurance benefits. She alleged a disability onset date of November 1, 2012, which she subsequently amended to December 1, 2013. Aldridge alleged a disability due to headaches, lupus, degenerative disc disease, pinched nerve, high blood pressure, high cholesterol, and depression/anxiety.

After Aldridge's claim was denied, she requested a hearing in front of an ALJ. On September 19, 2016, the ALJ held a hearing, during which Aldridge, who was represented by an attorney, appeared and testified.

On December 7, 2016, the ALJ issued an unfavorable decision. He found that Aldridge had the following severe impairments: degenerative disc disease of the cervical spine and depression. The ALJ also found that Aldridge's high blood pressure and high cholesterol were not severe impairments and that her lupus, headaches, and pinched nerve were not medically

determined.  The ALJ found that Aldridge had the residual functional capacity to perform light work, as defined in 20 C.F.R. § 404.1567(b), except that she was limited to simple, uncomplicated tasks with no more than one to three step instructions.

In assessing Aldridge's residual functional capacity, the ALJ gave significant weight to the opinions of Dr. Peter Loeser, a physician specializing in internal medicine who performed a consultative exam on Aldridge on June 2, 2015; Dr. Cheryl Bildner, a psychologist who performed a consultative exam on Aldridge on June 8, 2015; and two state-agency consultants who reviewed Aldridge's medical records up to June 2015.  The ALJ gave little weight to the opinion of Anita Lawrence, a physician's assistant who treated Aldridge.

Christine Spaulding, an impartial vocational expert, testified at the hearing by telephone.  In response to hypotheticals posed by the ALJ, Spaulding testified that a person with Aldridge's RFC could perform jobs that exist in significant numbers in the national economy, including fast food worker, cashier, and cleaner.  The vocational expert also testified that Aldridge could perform her past work as an assembler.  Based on the vocational expert's testimony, the ALJ found at Step Four, and in the alternative at Step Five, that Aldridge was not disabled.

4

On January 10, 2018, the Appeals Council denied Aldridge's request for review, making the ALJ's decision the Acting Commissioner's final decision. This action followed.

**DISCUSSION**

Aldridge raises two claims of error on appeal. She argues that the ALJ erred in (1) weighing the medical opinion evidence and (2) evaluating Aldridge's testimony about her symptoms and limitations.

I.  <u>Weight of Opinions</u>

Aldridge contends that the ALJ erred in his evaluation of several medical opinions in the record. Specifically, she argues that the ALJ erred by assigning little weight to Lawrence's opinion while assigning substantial weight to the opinions of Dr. Loeser, Dr. Bildner, and the state-agency consultants. Aldridge contends that the ALJ incorrectly found that Lawrence's own records contradicted her opinion and that Lawrence cited no objective medical evidence to support her conclusions. Aldridge also argues that the ALJ erroneously found that evidence that was not reviewed by the two non-examining state-agency consultants was immaterial. Aldridge thus contends that the ALJ should not have given the consultants' opinions substantial weight.

5

"An ALJ is required to consider opinions along with all other relevant evidence in a claimant's record." Ledoux v. Acting Comm'r, Soc. Sec. Admin., No. 17-cv-707-JD, 2018 WL 2932732, at *4 (D.N.H. June 12, 2018). "Medical opinions are statements from acceptable medical sources that reflect judgments about the nature and severity of [the claimant's] impairment(s), including [the claimant's] symptoms, diagnosis and prognosis, what [the claimant] can still do despite impairment(s), and [the claimant's] physical or mental restrictions." § 404.1527(a)(1).

The ALJ analyzes the opinions of state agency consultants, treating sources, and examining sources under the same rubric. See id.; § 404.1527(c). The ALJ must consider "the examining relationship, treatment relationship (including length of the treatment relationship, frequency of examination, and nature and extent of the treatment relationship), supportability of the opinion by evidence in the record, consistency with the medical opinions of other physicians," along with the doctor's expertise in the area and any other relevant factors. Johnson v. Berryhill, No. 16-cv-375-PB, 2017 WL 4564727, at *5 (D.N.H. Oct. 12, 2017).

A.  Dr. Loeser

Aldridge criticizes Dr. Loeser's opinion because he "did not assess Ms. Aldridge's current functional limitations and instead stated only his opinion that the limited range of motion in her cervical spine was likely to improve with treatment."  Doc. 7-1 at 9.  Viewed generously, Aldridge's argument is that the ALJ erred by giving Dr. Loeser's opinion substantial weight despite Dr. Loeser not offering an assessment of Aldridge's functional capacity.

Although he did not offer an opinion about Aldridge's functional capacity, Dr. Loeser observed that Aldridge was able to sit, stand, squat, and walk on her toes and heels, and he stated that Aldridge was able to move around the examination room "with ease."  Admin. Rec. at 33.  He further opined that Aldridge's limited range of motion would improve with treatment.  In rendering his opinion, Dr. Loeser reviewed Aldridge's medical records, including the June 2013 MRI relied on by Lawrence in rendering her opinion.  The ALJ also credited Dr. Loeser's expertise.  Substantial evidence thus supports the ALJ's decision to give Dr. Loeser's opinion substantial weight.

B.  Lawrence

Aldridge argues that the ALJ erred by giving Lawrence's opinion about Aldridge's functional capacity little weight.  She

7

contends that the ALJ mischaracterized Lawrence's treatment records in finding that her opinions were not consistent with her treatment notes and the record.

The ALJ's decision to give Lawrence's opinion, which stated that Aldridge could not perform activities beyond the sedentary exertional level, little weight is supported by substantial evidence. First, because Lawrence is a physician's assistant, she is not an "acceptable medical source" as defined by 20 C.F.R. § 404.1502.[1] And, although she treated Aldridge, Lawrence is not a "treating source" whose opinion may be entitled to controlling weight. Taylor v. Astrue, 899 F. Supp. 2d 83, 88 (D. Mass. 2012) (noting that only "acceptable medical sources" can be considered "treating sources"). The ALJ was thus within his discretion to give Lawrence's opinion less weight than the opinions of acceptable medical sources. See SSR 06-03P, 2006 WL 2329939, at *5 (S.S.A. Aug. 9, 2006) ("The fact that a medical opinion is from an 'acceptable medical source' is a factor that may justify giving that opinion greater weight than an opinion from a medical source who is not an 'acceptable medical source' . . . .").

---

[1] Aldridge filed her application for benefits before March 27, 2017. For claims filed after March 27, 2017, a physician's assistant may be an acceptable medical source for ailments within his or her licensed scope of practice. See § 404.1502(a)(8).

8

Furthermore, Lawrence gave only limited examples of objective medical evidence to support her suggested limitations, which was a sufficient reason for the ALJ to give her opinion limited weight. See McGrath v. Astrue, No. 10-cv-455-JL, 2012 WL 976026, at *5 n.13 (D.N.H. Mar. 22, 2012) ("When an opinion is given in a cursory fashion, the ALJ can properly give it less weight."). Lawrence generally stated that Aldridge's chronic neck pain, bilateral arm weakness, and paresthesia resulted in the selected limitations, citing only a June 2013 MRI that showed "minimal degeneration" of Aldridge's thoracic spine, slight decrease of disc space height in the cervical spine and "minimal foraminal encroachment" and "mild foraminal stenosis." Lawrence, however, did not explain why these conditions limited Aldridge's activity levels to the degree asserted in her opinion.

Aldridge takes issue with the ALJ's characterizations of Lawrence's treatment notes. For example, Aldridge argues that the ALJ erroneously concluded that Lawrence's treatment records suggested that she had "normal musculoskeletal" status. The ALJ's finding that Lawrence's opinion was not consistent with the record as a whole, however, was not premised merely on whether Lawrence found that Aldridge had a "normal musculoskeletal status," or exclusively on any of the mischaracterizations alleged by Aldridge. Instead, the ALJ

9

weighed Lawrence's opinion based on the fact that she was not an acceptable medical source and on the inconsistencies between her opinion and those of the acceptable medical sources.  The ALJ was entitled to resolve the conflicts in the evidence.  At best, Aldridge asks the court to reweigh the evidence, but "[r]esolving evidentiary conflicts is strictly the domain of the [ALJ]."  See Quaglia v. Colvin, 52 F. Supp. 3d 323, 334 (D. Mass. 2014).

### C. Dr. Bildner

As with Dr. Loeser, Aldridge appears to contend that the ALJ erred by giving Dr. Bildner's opinion substantial weight.  Aldridge, however, fails to develop any argument about why the ALJ erred in giving Dr. Bildner's opinion substantial weight.  Aldridge merely repeats the ALJ's reasons for his decision to give Dr. Bildner's opinion substantial weight without providing any relevant argument to show error.  To the extent Aldridge intended to challenge the weight the ALJ gave to Dr. Bildner's opinion, that argument is not sufficiently developed to be addressed.  See United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990) ("It is not enough merely to mention a possible argument in the most skeletal way, leaving the court to do counsel's work . . . .").

D.  Non-Examining State-Agency Consultants

Aldridge contends that the opinions of the two non-examining state-agency consultants, Drs. Stephanie Green and Jan Jacobson, should not have been given substantial weight because the consultants did not review the medical records after June 2015. Aldridge asserts that Lawrence's treatment records from April and July 2015, as well as Lawrence's December 2015 opinion, contained facts regarding hip pain and other spinal pain that the ALJ ignored in assessing whether the unreviewed medical records were material.

Substantial evidence supports the ALJ's decision to give Drs. Green's and Jacobson's opinions substantial weight.  Dr. Jacobsen, a psychologist, offered an opinion that was consistent with the opinion of Dr. Bildner, who performed a consultative psychological examination.  Aldridge does not explain why Lawrence's treatment records after June 2015, which focus on Aldridge's physical ailments and do not provide significant insight about Aldridge's degree of pain, were necessary to further inform Dr. Jacobson about Aldridge's mental status. Indeed, the treatment records about Aldridge's mental status after Dr. Jacobson's review are consistent with her opinion, as they indicated that Aldridge was "generally stable" and that she successfully completed counseling in April 2016.

11

Dr. Green likewise offered an opinion that was generally consistent with the medical record, including the treatment records which post-dated her review. As the ALJ found, the post-review treatment notes did not document any meaningful changes in Aldridge's condition. Giandomenico v. U.S. Soc. Sec. Admin., Acting Comm'r, No. 16-CV-506-PB, 2017 WL 5484657, at *4 (D.N.H. Nov. 15, 2017) (An "ALJ may rely on a consultant's outdated opinion if he determines that the evidence postdating the opinion did not materially change the record on which it was based."). Although Aldridge reported a new symptom, hip pain, after Dr. Green's review, it was still recommended by Lawrence that Aldridge "increase movement and go out for walks with [her] dog at least twice a day." Admin. Rec. at 34. Lawrence did not include hip pain as a reason for the suggested limitations in her medical opinion. Furthermore, the only medical evidence cited by Lawrence in her medical opinion, a June 2013 MRI, was reviewed by Dr. Green. Substantial evidence supports the ALJ's decision to give Dr. Green's opinion substantial weight.

For these reasons, the ALJ did not err in evaluating the medical opinion evidence in the record.

II. Aldridge's Subjective Complaints and Symptoms

Aldridge contends that the ALJ improperly evaluated her subjective complaints and symptoms. Specifically, Aldridge

12

contends that her treatment records show that she suffered pain symptoms to a greater degree than found by the ALJ. She argues that Lawrence's treatment notes are consistent with her alleged pain symptoms and that the ALJ erred in evaluating her subjective complaints and symptoms.

"[U]nder SSR 16-3p, which supersedes SSR 96-7p, an ALJ determining whether an applicant has a residual functional capacity that precludes a finding of disability must 'evaluate the intensity and persistence of an individual's symptoms such as pain and determine the extent to which an individual's symptoms limit his or her ability to perform work-related activities.'" Coskery v. Berryhill, 892 F.3d 1, 4 (1st Cir. 2018) (quoting SSR 16-3p, 82 Fed. Reg. 49462, 49464 (Oct. 25, 2017)). "Moreover, SSR 16-3p provides that, in conducting that inquiry, the ALJ must 'examine the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record.'" Id. (quoting SSR 16-3p, 82 Fed. Reg. at 49464).

In evaluating Aldridge's subjective complaints, the ALJ discussed Aldridge's testimony that she suffered from neck pain, pain when lifting, walking, numbness in her hands, and

13

depression. The ALJ also noted Aldridge's testimony that she could sit for 20 minutes; stand for 20 minutes; walk for 15 minutes; and lift only one pound. The ALJ nevertheless concluded that Aldridge's statements about the intensity, persistence, and limiting effects of Aldridge's symptoms were not supported by the record.

Aldridge argues that the ALJ contravened SSR 16-3p's instruction that an ALJ "not disregard an individual's statements about the intensity, persistence, and limiting effects of symptoms solely because the objective medical evidence does not substantiate the degree of impairment-related symptoms alleged by the individual." SSR 16-3p, 82 Fed. Reg. at 49465. The ALJ, however, examined the record as a whole, and he cited the treatment records from Lawrence, the medical opinions, and Aldridge's own reports of her daily activities in making his findings.

For example, Dr. Loeser reported that, in the June 2015 examination, Aldridge "moved with ease around the examination room without any apparent deficits or impairments." Admin. Rec. at 33. And Dr. Bildner observed in June 2015 that, while Aldridge was depressed, "her thought processes appeared intact," she was alert, her attention and concentration "appeared fair," and she left her house three to four times a week to grocery shop or go for a walk. Id. at 410-11. In addition, Dr. Bildner

14

noted, Aldridge reported caring for a "high energy" five-month-old puppy. A March 2015 function report indicated that Aldridge was able to drive if she "had to," that she watched television for four hours at a time, and that she could "visit with friends." Admin. Rec. at 31. Although the medical records noted Aldridge's pain, they also found that she maintained a "normal" gait and activity levels inconsistent with the degree of Aldridge's self-reported limitations. Given the entirety of the record, sufficient evidence supports the ALJ's discounting of Aldridge's statements regarding the intensity, persistence, and limiting effects of her symptoms.

Aldridge argues that her "normal gait" was an insufficient reason to conclude that her pain symptoms were not as limiting as alleged. Aldridge's "normal gait," however, is evidence that supports the ALJ's finding that Aldridge's pain symptoms were not as serious as alleged. See Balaguer v. Astrue, 880 F. Supp. 2d 258, 269 (D. Mass. 2012) (concluding that ALJ's discounting of applicant's testimony was supported by substantial evidence in part because "the medical evidence revealed that Balaguer had no significant abnormalities in gait . . . ."). Furthermore, as noted above, other evidence supported the ALJ's finding.

Aldridge asserts that the ALJ merely repeated the state-agency consultant's findings about Aldridge's lifting limitations without citing supporting evidence. In his opinion,

15

the ALJ reviewed the medical evidence and the opinions of each medical source.  He concluded that Aldridge's allegation that she could lift only one pound was not consistent with the medical opinions and examinations, none of which noted a limitation to that degree.  Lawrence's opinion that Aldridge could lift five pounds occasionally had limited explanation, and, as discussed above, substantial evidence supports the ALJ's decision to give that opinion little weight.  Aldridge points to no evidence consistent with her testimony that she could lift only one pound.

Next, Aldridge contends that the ALJ's findings that she would be able to carry out simple one-to-three step instructions in an employment setting were contradicted by Lawrence's opinion and Aldridge's own testimony that her pain interfered with her concentration.  The ALJ, however, relied on the opinion of Dr. Bildner in this regard.  Dr. Bildner examined Aldridge, noted her deficiencies and abilities, and concluded that she would be able to follow simple instructions and perform unskilled work.  The state-agency consultant concurred with Dr. Bildner's opinion about Aldridge's mental capability.  Although disparities existed between Aldridge's testimony, Lawrence's opinion, and Dr. Bildner's opinion, the ALJ was within his discretion to resolve the conflicts against Aldridge.  See Qualgia, 52 F. Supp. 3d at 337.

**CONCLUSION**

For the foregoing reasons, Aldridge's motion to reverse (doc. no. 7) is denied, and the Acting Commissioner's motion to affirm (doc. no. 9) is granted. The clerk of the court shall enter judgment in accordance with this order and close the case.

SO ORDERED.

_____
Landya McCafferty
United States District Judge

March 5, 2019

cc: Counsel of Record